UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX MENDELSON,<br><br>        Plaintiff,<br><br>    v.<br><br>SAN MATEO COUNTY,<br><br>        Defendant. | Case No. 20-cv-05696-AGT<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: Dkt. No. 11 |

In a pending motion to dismiss, San Mateo County argues that both claims in this action—a Fifth Amendment takings claim and a Fourth Amendment seizure claim—are unripe and should be dismissed. The Court agrees with the County and explains why below.

1. The Fifth Amendment Takings Claim

Felix Mendelson alleges that under the County's land-use laws, as he reads them, he is prohibited from making "any developmental or economically viable or beneficial use" of land that he owns within the County's Montecito riparian corridor and its buffer zone. Compl. ¶ 38. He contends that through the application of these laws to his land, the County has effectively taken his property without compensation in violation of the Fifth Amendment. *See id.* ¶ 40.

Mendelson admits that he has yet to provide the County with a plan to develop his land. *See, e.g.*, Opp'n, ECF No. 15 at 18–19. Until he submits such a plan and the County "reache[s] a final decision regarding the application of [its] regulations to the property at issue," his takings claim won't be ripe. *Pakdel v. City & Cty. of S.F.*, 952 F.3d 1157, 1163 (9th Cir. 2020) (quoting *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)); *see also Palazzolo v. Rhode Island*, 533 U.S. 606, 620 (2001) ("[A] landowner may not establish a taking before a land-use authority has the opportunity, using its own reasonable procedures, to decide and explain the reach of a challenged regulation.").

Mendelson argues that it'd be futile for him to submit a development plan. For having read the relevant land-use laws, he believes it's reasonably certain that no development would be approved. Futility is a recognized exception to *Williamson County*'s final-decision requirement. Under the exception, "resubmission of a development plan or the application for a variance from prohibitive regulations may be excused if those actions would be idle or futile." *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1501 (9th Cir. 1990). Precedent makes clear, though, that "even in instances where a regulation appear[s] on its face to be highly restrictive," "[t]he futility exception does not alter an owner's obligation to file one meaningful development proposal." *S. Pac. Transp. Co. v. City of L.A.*, 922 F.2d 498, 504 & n.5 (9th Cir. 1990); *see also Guatay Christian Fellowship v. Cty. of San Diego*, 670 F.3d 957, 982 (9th Cir. 2011) ("[E]ven if the [plaintiff] had made a sufficient 'futility' argument, Ninth Circuit jurisprudence in this area still does not excuse permit-seekers who fall into this exception from the final decision requirement from submitting at least one complete permit application.").[1]

In asserting that he doesn't need to submit a development plan before pursuing a takings claim (contrary to the precedent just cited), Mendelson relies on *Palazzolo*, 533 U.S. 606, *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725 (1997), and *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003 (1992). These decisions don't meaningfully support his position and aren't contrary to the rule that landowners must submit at least "one meaningful development proposal" before they proceed with a takings claim. *S. Pac. Transp. Co.*, 922 F.2d at 504.

In *Palazzolo* and *Suitum*, the plaintiffs were landowners who had each submitted one or more development plans or permit applications to local authorities, and the question was whether *additional* plans or applications needed to be submitted and considered before the landowners' takings claims ripened. Based on how the local authorities—not the landowners—interpreted the

---

[1] In lieu of a development plan, Mendelson does allege that in June 2019 he applied to the County for "a takings analysis." Compl. ¶ 29. But neither Mendelson nor the County suggests that this application was sufficiently detailed to constitute a "meaningful development proposal." *S. Pac. Transp. Co.*, 922 F.2d at 504. And even if it did reach that threshold, Mendelson acknowledges that the County hasn't issued a final decision on his application. *See* Compl. ¶ 30. A "final decision regarding the application of the regulations to the property at issue" must precede his takings claim. *Pakdel*, 952 F.3d at 1163 (citation omitted).

regulations in the decisions they had already made, the Court held that further plans were not required: for the prior decisions made clear how the regulations applied and what development would be permitted. *See Palazzolo*, 533 U.S. at 621 ("With respect to the wetlands on petitioner's property, the Council's decisions make plain that the agency interpreted its regulations to bar petitioner from engaging in any filling or development activity . . . . Further permit applications were not necessary to establish this point."); *Suitum*, 520 U.S. at 739 ("The demand for finality is satisfied by Suitum's claim, however, there being no question here about how the regulations at issue apply to the particular land in question. It is undisputed that the agency has finally determined that petitioner's land lies entirely within [a stream environment zone], and that it may therefore permit no additional land coverage or other permanent land disturbance on the parcel.") (citation and internal quotation marks omitted). Mendelson suggests that here, too, there is "no question . . . about how the regulations at issue apply" to his land. *Suitum*, 520 U.S. at 739. But it's not Mendelson's interpretation of the regulations that matters; it's the County's. The County must be given the opportunity to interpret its regulations and to apply them to the land in question. *Palazzolo* and *Suitum* don't suggest otherwise.

As for *Lucas*, 505 U.S. 1003, at first blush that opinion would appear to lend some support to Mendelson's position, for the plaintiff in *Lucas* didn't submit a development plan or permit application before filing a takings claim, and yet his takings claim wasn't dismissed on ripeness grounds. *See id.* at 1007–10. But *Lucas* was a unique case. The government "stipulated below that no building permit would have been issued" under the governing land-use law, "application or no application." *Id.* at 1012 n.3. By stipulation, then, the government effectively made a final decision about how the plaintiff could use his land, which ripened the takings claim. The same can't be said here. The County hasn't decided if or how Mendelson can develop his land. Until it does so, and until Mendelson submits sufficient information for the County to make that determination, the takings claim won't be ripe.[2]

---

[2] During the litigation in *Lucas*, the land-use law in question was amended; and under the amended law, the government took a different position, suggesting that it might allow the plaintiff to develop his land. *See id.* at 1010–12. Nothing similar is alleged here, so this post-amendment portion of *Lucas* isn't relevant.

3

Mendelson alternatively argues that the procedures he would need to follow to obtain a permit to develop his land are costly and unfair. He alleges that the County would require him to hire a biologist and a surveyor; that he'd need to submit at least two separate permit applications, one for permission to conduct a land survey and another for permission to build on the land; and that as a prerequisite for the land-survey permit, he may also need to obtain permits from other agencies, including the California Department of Fish and Wildlife and the County's Department of Public Works. *See* Compl. ¶¶ 15–17. He estimates that the entire process would cost "many tens of thousands of dollars," and take "months if not years" to complete. *Id.* ¶ 28.

A landowner is "not required to resort to . . . unfair procedures in order to obtain [a final] determination" from the government on the permitted uses of his land. *MacDonald, Sommer & Frates v. Yolo Cty.*, 477 U.S. 340, 350 n. 7 (1986); *see also Palazzolo*, 533 U.S. at 621 ("Government authorities, of course, may not burden property by imposition of repetitive or unfair land-use procedures in order to avoid a final decision."). But the procedures identified by Mendelson don't rise to the level that has been deemed unfair.

In *Del Monte*, 920 F.2d at 1506, the Ninth Circuit found that after multiple proposals and years of back-and-forth between a landowner and the local government, the government acted unfairly when it "abruptly changed course and disapproved the [landowner's development] plan even though the conditions specified had been substantially met." Similarly, in *Sherman v. Town of Chester*, 752 F.3d 554, 562 (2d Cir. 2014), the court found that a local government acted unfairly when "[f]or years, every time [the landowner] submitted or was about to submit a proposal" to develop his property, the government "changed its zoning regulations, sending [the landowner] back to the drawing board."

In both of these decisions, the development approval process was protracted, and it was the local government's inconsistency, and even obstinacy, that led to a finding of unfairness. Mendelson hasn't alleged facts suggesting any comparable behavior by the County. Nor has he identified any judicial decisions that have read *MacDonald* and *Palazzolo*'s "unfair procedures" exception more expansively and in a way that would be implicated here. That the County carefully controls development in an environmentally sensitive area doesn't mean, without more,

4

that the County's permitting procedures are unfair.  As for Mendelson's financial-burden argument, it doesn't warrant a different conclusion.  The Ninth Circuit has held that "the financial burden" of complying with land-use permitting procedures "do[es] not excuse [landowners] from submitting at least one complete permit application."  *Guatay*, 670 F.3d at 982.

Mendelson argues that even if his takings claim isn't ripe, the Court should exercise its discretion to assume ripeness and proceed to the merits.  "*Williamson County*'s ripeness requirements are prudential, not jurisdictional," and courts thus "have some discretion whether to impose them."  *Pakdel*, 952 F.3d at 1169.  But the circumstances under which courts have exercised this discretion (e.g., when the government belatedly raises a ripeness challenge, or when a takings claim is more efficiently resolved by dismissing it on the merits, *see id.*), are not present here.  The Court thus declines to assume ripeness.  At least until Mendelson submits a meaningful development plan and the County has considered that plan, the takings claim won't be ripe.[3]

2. The Fourth Amendment Seizure Claim

Mendelson alleges that by prohibiting all development and use of his land, the County not only has taken his land without compensation, in violation of the Fifth Amendment, but also has seized his land "arbitrarily and capriciously, and without any legitimate public purpose, in violation of the Fourth Amendment."  Compl. ¶ 44.

Like his takings claim, Mendelson's Fourth Amendment claim is not ripe.  Until Mendelson submits a meaningful development plan and the County has considered that plan, it would be speculative and premature to consider whether the County has seized Mendelson's land.

\\

\\

---

[3] Given that Mendelson has yet to submit a meaningful development plan, it would be premature for the Court to consider one of the other issues that was briefed, which is whether the County would have discretion to deviate from its land-use laws and to grant a variance if it determined that those laws didn't permit any developmental or economically viable use of Mendelson's land. *See* Opp'n, ECF No. 15 at 16–18 (arguing that the County lacks such authority).  As the Court won't consider the variance issue now, it denies Mendelson's request for judicial notice of certain documents that he submitted on this topic.  *See* ECF No. 16 (Pl.'s RJN).

\* \* \*

Having determined that Mendelson's claims are unripe, the Court grants the County's motion to dismiss. Mendelson has requested leave to amend his complaint; but because he admits that he has yet to provide the County with a meaningful development plan, any amendment at this point would be futile. The Court accordingly denies the request for leave to amend and dismisses Mendelson's claims without prejudice. Mendelson may renew his claims when they become ripe.

**IT IS SO ORDERED.**

Dated: December 1, 2020

ALEX G. TSE
United States Magistrate Judge