PAUL J. BEARD II (State Bar No. 210563)
**FISHERBROYLES LLP**
4470 W. Sunset Blvd., Suite 93165
Los Angeles, CA 90027
Telephone: (818) 216-3988
Facsimile: (213) 402-5034
E-mail: paul.beard@fisherbroyles.com

Attorney for Plaintiff FELIX MENDELSON, as trustee for
THE SHTAIMAN FAMILY TRUST

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FELIX MENDELSON, as trustee for THE SHTAIMAN FAMILY TRUST,<br><br>                                Plaintiff,<br><br>     v.<br><br>COUNTY OF SAN MATEO, and DOES 1 to 50, inclusive,<br><br>                                Defendants. | Case No.: 3:20-cv-5696<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF RE: PAKDEL'S EFFECT ON DEFENDANT'S MOTION TO DISMISS**<br><br><br>**THE HONORABLE ALEX G. TSE** |

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................................... 4

II.  ARGUMENT ................................................................................................................. 4

   A.   After *Pakdel*, a Takings Claimant Need Only Show *De Facto* Finality—Namely, That There Is No Question About How the Law Applies to His Property ........................................................................................ 4

   B.   *Ralston v. County of San Mateo* Was Wrongly Decided ....................................... 10

III. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

*Cedar Point Nursery v. Hassid*
  141 S. Ct. 2063, 2021 U.S. LEXIS 3394 (2021)..................................................................12

*Depot, Inc. v. Caring for Montanans, Inc.*
  915 F.3d 643, 652 (9th Cir. 2019)......................................................................................10

*Knick v. Twp. of Scott*
  139 S. Ct. 2162 (2019) ..................................................................................................7, 11

*Lingle v. Chevron U.S.A. Inc.*
  544 U.S. 528 (2005)............................................................................................................12

*Pakdel v. City and County of San Francisco*
  141 S. Ct. 2226 (2021) ................................................................................................ *passim*

*Pakdel v. City and County of San Francisco*
  952 F.3d 1157 (9th Cir. 2020).......................................................................................... 6-7

*Palazzolo v. Rhode Island*
  533 U.S. 606 (2001).................................................................................................... 6, 9-10

*Ralston v. Cty. of San Mateo*
  2021 U.S. Dist. LEXIS 161988 (N.D. Cal. Aug. 26, 2021)............................................... 10-12

*Suitum v. Tahoe Reg'l Planning Agency*
  520 U.S. 725 (1997)......................................................................................................5, 6, 9

*Surfrider Foundation v. Martins Beach 1, LLC*
  14 Cal. App. 5th 238 (2017) ...............................................................................................11

*Wg Woodmere Llc v. Town of Hempstead*,
  2021 U.S. Dist. LEXIS 160290 (E.D.N.Y. Aug. 23, 2021).........................................................7

*Williamson County Reg'l Planning Comm'n v. Hamilton Bank*
  473 U.S. 172 (1985)..............................................................................................................6

**STATUTES**

42 U.S.C. § 1983 ....................................................................................................................5

Cal. Pub. Res. Code § 30010 ........................................................................................... 10-11

## I.  INTRODUCTION

The thrust of Defendant County of San Mateo's motion is that Plaintiff Felix Mendelson's takings claim is not ripe until he mechanically submits and is inevitably denied at least one development proposal. If ever there were such an ironclad and formalistic rule in the Ninth Circuit in the past, the Supreme Court repudiated it last term in *Pakdel v. City and County of San Francisco*, 141 S. Ct. 2226 (2021).

*Pakdel* makes clear that the ripeness requirement for takings claims is very "modest," so that "*[a]ll* a plaintiff must show is that there [is] no question . . . about how the regulations at issue apply to the particular land in question." *Pakdel*, 141 S. Ct. at 2230 (emphasis added). Here, there is no question about how the County's Local Coastal Program ("LCP" or "regulations") for the Riparian Corridor apply to Mr. Mendelson's claims: They categorically prohibit all development. Consequently, under *Pakdel*, Mr. Mendelson's takings claim is ripe.

For the reasons stated in his Opposition Brief and his supplemental briefing on *Pakdel*, the Court should deny the County's motion and allow Mr. Mendelson to proceed to the merits of his claims.[1]

## II.  ARGUMENT

### A.  After *Pakdel*, a Takings Claimant Need Only Show *De Facto* Finality—Namely, That There Is No Question About How the Law Applies to His Property

As explained in Mr. Mendelson's Opposition Brief, the County has no discretion to approve any economically beneficial or productive use of his lots, which are located in the Riparian Corridor and buffer zone. Complaint ¶¶ 11-13, Exh. A (LCP Policies 7.8 - 7.12), Exh. B (Montecito Riparian Corridor map); see also Request for Judicial Notice in Support of Supplemental Brief (filed herewith), Exhibits A-I (public documents evidencing fact that County has always known it has no discretion to deviate from the prohibition against

---

[1] Mr. Mendelson brings two claims—a takings claim and a seizure claim. Both are ripe, as explained in Mr. Mendelson's original Opposition Brief. To the extent the Court concludes the takings and seizure claims are governed by the same ripeness jurisprudence, *Pakdel* establishes—without a scintilla of doubt—that both claims are ripe. References in this brief to Mr. Mendelson's takings claim apply equally to his seizure claim.

Riparian Corridor development). The LCP contains no provision conferring authority to deviate from that prohibition, and the County points to none.[2] Because "there [is] no question here about how the regulations at issue apply to the particular land in question," Mr. Mendelson's takings claim is ripe. *Suitum v. Tahoe Reg'l Planning Agency*, 520 U.S. 725, 739 (1997).

The County nevertheless argues the claim is unripe. It reasons that it is impossible to know whether and to what extent the LCP permits development unless and until the County renders a "final decision" on at least one "meaningful" development application that runs its course through the administrative process. Motion to Dismiss ("Mot.") at 10. But as the Supreme Court made clear in *Pakdel*, that argument reflects an incorrect understanding of the "modest" ripeness doctrine.

In *Pakdel*, the owners of numerous units in a San Francisco building applied to the city to convert their tenancy-in-common holdings into individual condominiums. *Pakdel*, 141 S. Ct. at 2228. Under city law, nonoccupant owners who rent their units must offer their tenants lifetime leases as the condition of conversion. Petitioners were owners of one such rental unit. *Id.* Along with other owners, petitioners applied for a conversion, agreeing to offer a lifetime lease to their tenant. But after the city approved the conversion, petitioners informally requested either an exemption from the lease requirement or compensation for a taking. *Id.* The city refused, and petitioners challenged the requirement as a taking pursuant to 42 U.S.C. § 1983. *Id.* at 2228-29.

A divided panel of the Ninth Circuit dismissed the takings claim as unripe. As the dissenter noted, there was no question that "the initial decisionmaker ha[d] arrived at a definitive position on the issue," or that the city "could no longer grant relief." *Pakdel v. City & County of San Francisco*, 952 F.3d 1157, 1171 (9th Cir. 2020) (Bea, J., dissenting)

---

[2] Had the Ninth Circuit in this case credited the County's claim that it has discretion to grant a permit for development of Mr. Mendelson's lots—alleged discretion that is absolutely nowhere to be found in any law or regulation—the Ninth Circuit unlikely would have asked this Court to reassess the motion in light of *Pakdel*. It is more likely the Ninth Circuit simply would have affirmed this Court's dismissal.

- 5 -
Plaintiff's Supp. Brief Re: Defendant's Motion to Dismiss

(internal quotation marks omitted), *overruled by* 141 S. Ct. 2226. But the majority concluded there was no conclusive decision ripening the claim, because petitioners failed to exhaust their administrative remedies before approval of the conversion so that the city could "exercise its flexibility or discretion to grant an exemption." *Pakdel*, 952 F.3d at 1167-68.

In a unanimous *per curiam* decision, United States Supreme Court reversed the majority opinion. The Court held:

> "We . . . think that the Ninth Circuit's view of finality is incorrect. The finality requirement is relatively modest. All a plaintiff must show is that 'there [is] no question . . . about how the 'regulations at issue apply to the particular land in question.' . . . ***Nothing more than de facto finality is necessary***."

*Pakdel*, 141 S. Ct. at 2230 (emphasis added_ (quoting *Suitum*, 520 U.S. at 739).

"Nothing more than de facto finality is necessary"—a holding that would henceforth render the ripeness doctrine, not just prudential,[3] but ***practical***. *Pakdel*, 141 S. Ct. at 2230. The Court rejected the "demand that a plaintiff seek an exemption through the prescribed [state] procedures," which improperly "requires exhaustion." *Id.* at 2230. Exhaustion "is not a prerequisite for a takings claim when the government has reached a conclusive position," and no "avenues still remain for the government to clarify or change its decision." *Id.* at 2231. As examples of "avenues" to explore before ripening a takings claim, the Court cited the variance procedures available to takings claimants in *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 192-94 (1985), and *Knick v. Twp. of Scott*, 139 S. Ct. 2162 (2019). Significantly, the Court also cited the circumstance in which "submission of [a] proposal would not have clarified the extent of development permitted …, which is the inquiry required under our ripeness decisions." *Pakdel*, 141 S. Ct. at 2231 (quoting *Palazzolo v. Rhode Island*, 533 U.S. 606, 624-625 (2001)) (internal quotation marks omitted).

---

[3] *Suitum*, 520 U.S. at 733-34 (ripeness is prudential rule).

As *Pakdel* explains, ripeness does not require the rote exhaustion of administrative remedies for the sake of exhaustion, including submitting development proposals that must, of legal necessity, be denied. That approach elevates form over substance—the *de jure* over the *de facto*—and "is inconsistent with the ordinary operation of civil-rights suits," including takings claims. In a takings case, "[a]ll a plaintiff must show is that 'there [is] no question . . . about how the 'regulations at issue apply to the particular land in question.'" *Pakdel*, 141 S. Ct. at 2230.

Under *Pakdel*, a court simply must ask whether the agency has a position on whether and how much development is allowed under a regulation. That position may be reflected in a formal decision on a formal development application that runs the administrative-exhaustion traps. But that is not the *only* way for a court to ascertain an agency's position. The position also may be reflected in the law that the agency authored: If the law categorically prohibits development, with no variance or exception, the agency's position has been codified—and is as clearly ascertainable as if it had rendered a decision following a formal development application. *Pakdel* elevates substance over form—or, the *de facto* over the *de jure*.

A recent decision of the federal district court for the Eastern District of New York, which applied *Pakdel* in circumstances similar to this case, is instructive. In *Wg Woodmere Llc v. Town of Hempstead*, 2021 U.S. Dist. LEXIS 160290 (E.D.N.Y. Aug. 23, 2021), municipalities where a large property was located had passed a zoning scheme whose restrictions were clear. The owner brought a takings claim, and the municipal defendants moved to dismiss on, *inter alia*, ripeness grounds because owner had failed to submit and be denied at least one development application. Relying on *Pakdel*, the court rejected the ripeness argument:

> "Here, as in *Pakdel*, there is no question as to how the zoning at issue applies to the Property. . . . [T]his is not a case where a general zoning requirement might be waived, or a variance granted as to the use of a particular parcel within a zoning scheme. . . . Because Defendants have made clear exactly the development that they will allow on the Property, **no application need be submitted to answer the question of what will be allowe**d. Indeed, adoption of Defendants' position on this issue would amount to imposition of an exhaustion requirement, a procedural hoop that the Constitution does not allow. **In sum, the**

***case is ripe because, despite the lack of an application or variance, where is no question that clarity exists***."

*Id.* at *41-42 (emphasis added).

Similarly, here, there is no question about how the Riparian Corridor regulations apply to Mr. Mendelson's lots. Lots 5, 6, and 7 ("35" in the map) lie ***entirely*** within the Riparian Corridor. Complaint, ¶¶ 23, Exh. B (Riparian Corridor map). Lot 4 is represented as the upper portion of "21" in the map at Exhibit B to the Complaint. That lot lies almost completely within the Riparian Corridor, with a small portion located in the buffer zone. *Id.* Significantly, the only access to all four lots—Montecito Avenue—is a "paper" road that runs down the middle of the corridor. Complaint, Exh. B (Riparian Corridor map). Neither the lots nor the paper road can be developed. Complaint ¶¶ 11-13, Exh. A (LCP Policies 7.8 - 7.12).

The County's silence in the face of repeated written requests for an informal "takings analysis" only confirms what the regulations say—no development is allowed. Under that informal process, an owner with land in a developmentally constrained area can apply to the County for that takings analysis without submitting a specific development plan. Complaint ¶ 18. Upon application, the County renders a determination as to whether and the extent to which its Riparian Corridor regulations would effect a compensable taking. In 2019, Mr. Mendelson was ready, willing, and able to build single-family homes on his lots, but he soon came to the obvious conclusion that he could make no economic or productive use of his property based on a plain reading of the LCP. Complaint ¶ 31. Accordingly, he availed himself of the County's special application procedure and sought a formal determination from the County confirming that conclusion. Complaint ¶ 29. Despite Mr. Mendelson's ***repeated attempts*** to confirm the obvious over the course of the following six months, the County never responded. Complaint ¶ 30. If the County really thought development on the lots were possible under its regulations, it would have said so, but remained silent.

All these facts must be accepted as true on a motion to dismiss. *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 652 (9th Cir. 2019).

The County remarkably claims it doesn't know how much of Mr. Mendelson's property is in the Riparian Corridor or buffer, in part because its map provides only an "approximate" boundary of the Riparian Corridor. The County's claim defies an aerial picture of "the current condition of" of the lots, showing they are covered entirely in riparian vegetation—a fact that, on a motion to dismiss, must be accepted as true. Complaint, ¶¶ 22-23; see also Request for Judicial Notice in Support of Supplemental Brief (filed herewith), Exhs. J-K (showing the County knows well the Riparian Corridor boundaries and doesn't require a formal application to ascertain whether and what development is permitted). It defies the County's very recent past practice of performing informal "takings analyses" on parcels within the smaller-than-four-acre Riparian Corridor, and opining on developability without any site-specific boundary surveys, delineations, or studies whatsoever. In any event, whatever the precise boundary of the corridor, there is no question that the only access to the lots is undevelopable Montecito Avenue, which bisects the Riparian Corridor and runs far from either edge of the mapped boundary. Complaint, Exh. B (Riparian Corridor map). Mr. Mendelson has no access to his lots. Tellingly, no lot with sole access from Montecito—like Mr. Mendelson's lots—has been developed since the LCP was certified. Complaint (Riparian Corridor map).

When, like the County here, "the agency has no discretion to exercise over [an owner's] right to use her land, no occasion exists for" mandating that "a landowner take steps to obtain a final decision about the use that will be permitted on a particular parcel." *Suitum*, 520 U.S. at 739. Indeed, "submission of [a] proposal would not . . . clarif[y] the extent of development permitted" on Mr. Mendelson's lots, "which is the inquiry required under [the Supreme Court's] ripeness decisions." *Palazzolo*, 533 U. S. at 624-625; *see also Pakdel*, 141 S. Ct. at 2231 (quoting, approvingly, *Palazzolo* for that very proposition). Ripeness "does not require [Mr. Mendelson] to submit applications for their own sake," and requires him "to explore development opportunities on his . . . parcel only if there is

uncertainty as to the land's permitted use." *Palazzolo*, 533 U.S. at 622 (emphasis added). Again, there is no such uncertainty here. To nevertheless require Mr. Mendelson to slog through the County's administrative process by submitting and being denied one or more development applications is to render the finality rule stringent (not modest) and demand *de jure* (not) finality—contrary to the dictates of *Pakdel*. To implement a stringent and *de jure* finality rule is also to impose a procedural burden on takings claimants that ordinary civil-rights plaintiffs are not forced to bear. "Given that the Fifth Amendment enjoys full-'fledged constitutional status,' [there is no] basis to relegate [Mr. Mendelson's takings] claim 'to the status of a poor relation' among the provisions of the Bill of Rights." *Pakdel*, 141 S. Ct. at 2231 (quoting *Knick*, 139 S. Ct. 2162).

On the facts he alleges in the Complaint, *Pakdel* compels only one conclusion: Mr. Mendelson's claim is ripe for the Court's review.

### B. *Ralston v. County of San Mateo* Was Wrongly Decided

The County may cite *Ralston v. Cty. of San Mateo*, 2021 U.S. Dist. LEXIS 161988 (N.D. Cal. Aug. 26, 2021), which was decided while this case was on appeal. In *Ralston*, owners of a lot in the same Riparian Corridor as Mr. Mendelson's lots sued the County for a taking on the grounds that the County's regulations prohibit development there. Like Mr. Mendelson, the owners applied for an informal takings analysis, to which the County responded that no taking would occur from application of the LCP's Riparian Corridor policies. *Id.* at **3-6. The owners then sued for a taking. *Id.* at *7.

The County moved to dismiss the takings claim as unripe, which the Court granted. *Id.* at **26-27. Respectfully, the *Ralston* decision is flawed for at least two reasons.

The decision turns on the mistaken view that, despite what the County's LCP says, the County has discretion to allow development on the Ralston lot. In particular, the *Ralston* Court seemed persuaded that another law—section 30010 of the Public Resources Code ("the Coastal Act")—allows the County to depart from the legal prohibition on development on the owners' lot. But section 30010 merely affirms the unremarkable proposition that the Coastal Act does not authorize ***uncompensated***—and thus unconstitutional—takings. Cal. Pub. Res. Code § 30010

(permit decisions that "take or damage private property for public use, without the payment of just compensation therefor" are unauthorized). As a California Court of Appeal has rightly observed, section 30010 "merely restates the limitations imposed by the takings clauses," which require just compensation for private property taken for a public use. *Surfrider Foundation v. Martins Beach 1, LLC*, 14 Cal. App. 5th 238, 253 (2017); *Cedar Point Nursery v. Hassid*, 141 S. Ct. 2063, 2021 U.S. LEXIS 3394, *12 (2021) (Under the Takings Clause of the United States Constitution, "the government must pay for what it takes."). Significantly, section 30010 has absolutely nothing to say about whether the Coastal Act authorizes a permit decision resulting in a **constitutional** taking—i.e., a taking for which compensation is paid. *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (explaining that the Takings Clause does not render all takings (for public use) unlawful, but only such takings for which just compensation is not paid).[4] And, by its own terms, section 30010 does not prohibit lawful takings, if the agency doing the taking pays for it.

The *Ralston* decision distinguishes *Pakdel* on the basis of County discretion that simply does not exist in the LCP or anywhere else. Simply put, there is no variance, exemption, or other mechanism for the County to deviate from its LCP. Given the County's lack of discretion, and the absence of any need to clarify the extent of development under applicable regulations, the Ralston owners should not have been required to submit a formal development application to ripen their claim.

Second, the Ralston decision fails to adequately credit the Ralstons' efforts (like Mr. Mendelson's) to procure the County's written acknowledgement of the LCP's prohibitory effect on their property via the County's informal "takings analysis" process. Even if it were true that the County's LCP provides a "safety valve" to allow development on otherwise-undevelopable property, the County's response to the Ralstons' takings analysis request easily established that no development there is possible. *Pakdel*'s "modest" finality rule,

---

[4] Further, even if section 30010 did something more than merely restate the constitutional prohibition against unconstitutional takings, by its terms, the provision does not apply to the County. That is because, when it makes permit decisions, the County acts pursuant to its Local Coastal Program (a local law), *not* the Coastal Act. *See* Mr. Mendelson's Opp. Br. to County's Mot. to Dismiss, pp. 11-13.

which only requires *de facto* finality, renders the Ralstons' claim—like Mr. Mendelson's—fully ripe.

### III. CONCLUSION

For the reasons stated in the Opposition Brief, and those in this brief, the Court should deny the County's Motion to Dismiss and allow Mr. Mendelson's claims to proceed to the merits.

DATED: November 15, 2021            /s/ Paul Beard II

_____
Attorney for PLAINTIFF FELIX MENDELSON