PAUL J. BEARD II (State Bar No. 210563)
**FISHERBROYLES LLP**
4470 W. Sunset Blvd., Suite 93165
Los Angeles, CA 90027
Telephone: (818) 216-3988
Facsimile: (213) 402-5034
E-mail: paul.beard@fisherbroyles.com

Attorney for Plaintiff FELIX MENDELSON, as trustee for
THE SHTAIMAN FAMILY TRUST

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX MENDELSON, as trustee for THE SHTAIMAN FAMILY TRUST<br><br>　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>COUNTY OF SAN MATEO, and DOES 1 to 50, inclusive,<br><br>　　　　　　　　　　　Defendants. | Case No.: 3:20-cv-5696<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF RE: PAKDEL'S EFFECT ON DEFENDANT'S MOTION TO DISMISS**<br><br><br>**THE HONORABLE ALEX G. TSE** |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S SUPPLEMENTAL BRIEF**

Defendant County of San Mateo's Supplemental Brief fails to establish that Plaintiff Felix Mendelson's claims are unripe in light of *Pakdel v. City & County of San Francisco*, 141 S. Ct. 2226 (2021).

First, the County argues that "avenues still remain for [it] to clarify or change its decision" prohibiting development on Mr. Mendelson's lots, and that "the possibility remains that the County could approve some amount of development . . . if presented with a proper application." County Supp. Br. at 1, 4 (quoting *Pakdel*, 141 S. Ct. at 2231) (internal quotation marks omitted). But tellingly, the County fails to identify any such "avenues" for deviating from the plain language of its Riparian Corridor regulations. On their face, those regulations categorically prohibit development of Mr. Mendelson's lots and the paper roads that run right down the middle of the corridor. Complaint ¶¶ 11-13 & Exh. A (LCP Policies 7.8 – 7.12). Significantly, the regulations provide no variance or other mechanism for departing from their strict prohibition. The County's failure to cite even a *single* provision of law that provides for alleged "avenues" of development speaks volumes.[1]

Second, the County asserts that *Pakdel* demands an "active, rather than passive," conclusion about the land in question." County Supp. Br. at 2. As far as Mr. Mendelson can tell, an "active" conclusion follows formal review of at least one development proposal, while a "passive" conclusion is achieved through enactment of a law or regulation. None of the language that the County pulls from *Pakdel* supports this dichotomy.

An agency need not review and deny a development proposal (let alone multiple proposals) in order to "reach[] a final decision," "make[] up its mind," "firmly reject[]" development, "commit[] to a position," or "adopt[] its final position." County Supp. Br. at 2 (quoting *Pakdel*, 144 S. Ct. at 2228-31). To the contrary, there is no clearer way for a government to reach a final decision, make up its mind, or commit and adopt to a final position about permissible development

---

[1] The County cites nothing in the record to support its allegation that some economically viable or beneficial development of Mr. Mendelson's lots may be possible. At most, it cites to its Motion to Dismiss, but that also contains no support for its allegation. County Supp. Br. at 4:6-7.

1    of property than through the enactment of laws and regulations that categorically bar all
2    development. That is precisely what the County did when it enacted the Riparian Corridor
3    regulations, which reflect the County's considered—and final—position that no development is
4    allowed in the Riparian Corridor. The County's view that at least one development proposal must
5    be submitted and denied in order to ripen a claim is to puts form over substance, and ignores
6    *Pakdel*'s warning that "[n]othing more than de factor finality is necessary." *Pakdel*, 141 S. Ct. at
7    2230. More to the County's point, Pakdel does not dictate the ***means*** to achieving a final decision
8    (e.g., review and denial of one or more development applications); instead, *Pakdel* dictates the ***end***
9    that must be achieved—namely, that there be "no question . . . about how the regulations at issue
10   apply to the particular land in question." *Pakdel*, 141 S. Ct. at 2230.[2]

11   None of the authorities the County cites in its Supplemental Brief helps it. Indeed, except
12   for *Ralston v. Cty. of San Mateo*, NO. 21-CV-01880-EMC (N.D. Cal. Aug. 26, 2021), which Mr.
13   Mendelson discusses at length in his Supplemental Brief, the County's authorities only ***support*** a
14   finding of ripeness.

15   In *N. Mill St., LLC v. City of Aspen*, 6 F.4th 1216 (10th Cir. 2021), the court of appeal
16   considered *Pakdel*'s effect on the ripeness of plaintiff's taking claim. The claim was based on a
17   newly enacted city ordinance prohibiting a particular kind of development project ("free market
18   residential") that plaintiff wanted to pursue. The city argued the claim was unripe because the
19   plaintiff did not submit an application. The court summarized the standard for ripeness following
20   *Pakdel* as follows:

> A plaintiff may demonstrate *de facto* finality by showing (1) the agency lacks the discretion to permit any development, ***or*** (2) the permissible uses of the property are known to a reasonable degree of certainty. The finality requirement does not require landowners to exhaust administrative procedures, or to submit applications for their own sake. Instead, a "final decision" has been reached and a

---

[2] Even assuming an owner must submit an application under *Pakdel* or antecedent precedents (which they do not), the County's Supplemental Brief fails to address the fact that Mr. Mendelson made repeated requests to the County for an informal takings analysis. Complaint ¶¶ 29-31. The County never responded to those requests. *Id*. The County's silence in the face of such repeated requests only confirms what the Riparian Corridor regulations say: No economically viable or beneficial development is allowed on Mr. Mendelson's lots.

> regulatory takings claim becomes prudentially ripe for judicial resolution "[o]nce the government is committed to a position." *Pakdel*, 141 S. Ct. at 2230. So a showing that pursuit of further administrative relief would be futile would satisfy the finality requirement.

*N. Mill St.*, 6 F.4th at 1230 (emphasis added) (some internal citations and quotation marks omitted).

Notably, under *N. Mill St.*, **either** the lack of discretion to permit any development **or** knowing the permissible uses of the law to a reasonable degree of certainty is sufficient to ripen a taking claim. *Id.*

The court easily concluded that the taking plaintiff was unripe because it had "failed to adequately plead that the agency lacks the discretion to permit any development, or the permissible uses of the property are known to a reasonable degree of certainty." *Id.* at 1230-31 (internal citation and quotation marks omitted). The court found that the city "retain[ed] discretion to approve a use variation" pursuant to a city-codified process for obtaining variances. *Id.* at 1222-23, 1231.

The *N. Mill St.* court also rejected plaintiff's argument that the permissible uses of its property were known to a reasonable degree of certainty. *Id.* at 1233-34. That should have come as no surprise to plaintiff given that city law contemplated the possibility of less intensive development or even of a variance to allow plaintiff's exact project. *Id.*

By contrast, in this case, it is undisputed that the County's laws provide no variance process or other mechanism that would allow the County to deviate from the strict Riparian Corridor prohibition on development of Mr. Mendelson's lots. Nor is there any doubt about what the Riparian Corridor regulations say and do: They categorically prohibit development of his lots, as well as the paper roads providing the only access thereto. Complaint ¶¶ 11-13 & Exh. A (LCP Policies 7.8 – 7.12). *N. Mill St.* supports the ripeness of Mr. Mendelson's claims.

The same is true of the other appellate court decision cited by the County: *Willan v. Dane Cty.*, 2021 U.S. App. LEXIS 28403 (7th Cir. Sept. 20, 2021). There, plaintiffs sued the county for a taking after it rezoned their property from commercial to residential use. Plaintiffs had, for 10 years, been operating a business out of their barn. *Id.* at *1. Under county law, the county had the discretion to grant the plaintiffs either a conditional use permit or a zoning variance to allow continued use of the property as a business. *Id.* at **7-8. But plaintiffs pursued neither option. *Id.*

The court deemed plaintiff's taking claim unripe, because "avenues still remain[ed]" for the county "to clarify or change its decision." *Id.* at *8 (quoting *Pakdel*, 141 S. Ct. at 2231) (internal quotation marks omitted).

Here, of course, there *are* no avenues for the County to deviate from its Riparian Corridor regulations. If there were, the County would have been able to describe those avenues in its Supplemental Brief (and other briefing), with appropriate citation to the County's laws and regulations. But it notably has not done so.

## CONCLUSION

For the reasons stated in Mr. Mendelson's Opposition to the County's Motion to Dismiss, as well as the supplemental briefing regarding *Pakdel*, the Court should deny the County's Motion to Dismiss and allow his claims to proceed to the merits.

DATED: November 22, 2021        /s/ Paul Beard II

_____
Attorney for PLAINTIFF FELIX MENDELSON