1  JOHN C. BEIERS, COUNTY COUNSEL (SBN 144282)
   By: Kimberly A. Marlow, Deputy (SBN 130342)
2  By; Timothy J. Fox, Deputy (SBN 190084)
   By: Lauren F. Carroll, Deputy (SBN 333446)
3  Hall of Justice and Records
   400 County Center, 6th Floor
4  Redwood City, CA  94063
   Telephone: (650) 363-4787
5  Facsimile: (650) 363-4034
   E-mail:  lcarroll@smcgov.org
6            kmarlow@smcgov.org
             tfox@smcgov.org
7

8  Attorneys for Defendant
   COUNTY OF SAN MATEO
9

10
                    UNITED STATES DISTRICT COURT
11
                   NORTHERN DISTRICT OF CALIFORNIA
12

13  MENDELSON, FELIX, as trustee for THE          Case No. 20-cv-05696-AGT
    SHTAIMAN FAMILY TRUST,
14                                                **DEFENDANT COUNTY OF SAN MATEO'S
                      Plaintiff,                  SUPPLEMENTAL REPLY BRIEF IN
15                                                SUPPORT OF ITS MOTION TO DISMISS**
           vs.
16
    COUNTY OF SAN MATEO,
17
                      Defendant
18

19                                                **THE HONORABLE ALEX G. TSE**

20

21

22

23

24

25

26

27

28

**DEFENDANT COUNTY OF SAN MATEO'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF
ITS MOTION TO DISMISS**

## I.     INTRODUCTION

The issue here is whether Plaintiff Felix Mendelson has established that Defendant County of San Mateo has rendered a final decision as to how its regulations apply to his property, and thus whether his takings claim is ripe for adjudication. Under the Supreme Court's recent decision in *Pakdel*, he has not.

*Pakdel* in no way diminished, but rather reaffirmed, the rule that a regulatory takings claim is not ripe without a final decision by the relevant government agency. Mendelson's interpretation of the final decision rule is so narrow as to nearly eliminate it. He can find no support in *Pakdel*, nor the cases decided before and after *Pakdel*, for his view that he can establish finality based solely on the text of the regulations and the County's non-response to an informal inquiry about his property.

In his Supplemental Brief, Mendelson leans heavily on *Pakdel*'s holding that administrative exhaustion is not necessarily a prerequisite to a ripe takings claim. He believes this holding excuses him from ever applying for a development permit. But he downplays a crucial caveat: Exhaustion is not a prerequisite only "when the government has reached a conclusive position." 141 S. Ct. at 2231. Mendelson has not shown that the County has reached any decision about his property, let alone a conclusive one. Contrary to Mendelson's characterization, the County's position is not that his "takings claim is not ripe until he mechanically submits and is inevitably denied at least one development proposal." Plf.'s Supp. Br. 4:3-4. Rather, it is that his failure to submit a development proposal is evidence that, and an explanation for why, he has not received a final decision from the County.

Mendelson's claims remain unripe under *Pakdel*, and this court should grant the County's motion to dismiss the Complaint without leave to amend.

## II.     ARGUMENT

### A. Finality under *Pakdel* requires Mendelson to allege facts showing that the County has made a final decision applying its regulations to his property, and he has not done so.

Mendelson misleadingly claims that "Under *Pakdel*, a court simply must ask whether the agency has a position on whether and how much development is allowed under a regulation." Plf.'s Supp. Br. 7:8-9. Although "the finality requirement is relatively modest" (not "very" modest, as Mendelson puts it), *Pakdel* still requires a plaintiff to show something more than just "a" government position. 141 S. Ct. at 2230. This position must be "final," "definitive," "conclusive." The plaintiff must show that there is no

Case No. 20-cv-05696-AGT                     1

**DEFENDANT COUNTY OF SAN MATEO'S SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS**

more room "for the government to clarify or change its position." *Id.* at 2231. Only when the government "is committed to a position," do "potential ambiguities evaporate and the dispute is ripe for judicial resolution." *Id.* at 2230. Mendelson alleges no facts showing that the County has ever taken any position about how it would apply the Riparian Corridor regulations to his property.

Despite bringing an as-applied rather than facial challenge to the Riparian Corridor regulations, Mendelson asserts that the mere existence of strict land use regulations are a taking. He claims that *Pakdel* stands for the following proposition: When a government adopts strict land use regulations, its position about a potentially impacted property "has been codified – and is as clearly ascertainable as if it had rendered a decision following a formal development proposal." Plf.'s Supp. Br. 7:8-16. Nowhere in *Pakdel* did the Court say that the text of a generally applicable regulation can itself be a final decision. *Pakdel* did not even contemplate that scenario, as it involved a landowner who had applied for and received a permit, but was definitively denied a variance from one of the permit conditions. 141 S. Ct. at 2230.  Contrary to Mendelson's assertion, the Supreme Court has indicated that strict regulations alone are insufficient to establish finality. *See Palazzolo v. Rhode Island*, 533 U.S. 606, 619 (2001) (explaining that the government's position was known based on the seemingly "unequivocal nature of the wetland regulations at issue *and* by the Council's application of the regulations to the subject property" (emphasis added)); *Suitum v. Tahoe Reg'l Plan. Agency*, 520 U.S. 725, 739 (1997) ("[A] sound judgment about what use will be allowed simply cannot be made by asking whether a parcel's characteristics or a proposal's details facially conform to the terms of the general use regulations.")

 Mendelson cites only a Report & Recommendation out of the Eastern District of New York to support his claim that the mere existence of regulations can establish finality, and even that case is readily distinguishable. *WG Woodmere v. Town of Hempstead*, Report and Recommendation, Aug. 23, 2021, Case 2:20-cv-03903-ARR-AYS, ECF No. 49; Plf.'s Supp. Br. 7:17. There, the plaintiff wanted to redevelop its land, a golf club that spanned three towns. *Woodmere*, at 4.  After years of negotiation and litigation concerning the towns' resistance to the development, all three towns adopted strict flood area zoning rules that applied only to the property. *Id.* at 15. This "novel regulatory scheme" did not even apply to other golf clubs also located in flood zones. *Id*. at 20. Mendelson selectively quotes from this case to suggest that the nature of the regulations alone were sufficient to ripen the takings claim. Plf.'s

Supp. Br. 7:24-8:2. In reality, the court found that the towns had made their final position clear by enacting a zoning scheme that was "comprised only of the Property." *Woodmere,* at 26. The court contrasted this from situations like the present case, in which the parcel at issue is just one of many covered by a regulatory scheme. *Id.* And "The years of negotiation which culminated in the Town's refusal to even schedule a vote on prior zoning makes this [position] even clearer." *Id.* In sum, it was the circumstances leading up to the adoption of the regulations – which involved plaintiff's land directly and individually – that made the towns' positions clear. Mendelson does not allege that the County enacted its Riparian Corridor regulations under similar circumstances affecting his land directly.

Mendelson also claims to establish finality based on the fact that the County did not respond to his alleged request for a "takings analysis." Plf.'s Supp. Br. 8:12-26. Again, nothing in *Pakdel* supports a conclusion that a non-response to an informal inquiry on a limited issue is evidence that "the government is committed to a position" on how it will apply its regulations to the property. 141 S.Ct. at 2230. (In his supplemental brief, Mendelson calls his inquiry, alternatively, a "special application procedure" that leads to a "formal determination," and an "informal process" that does not require "specific development plans." 8:12-22. The latter description is consistent with the Complaint. ¶ 18.) On the contrary, *Pakdel* expects landowners to pursue the administrative process further to ripen their claims "if avenues still remain for the government to clarify or change its decision." 141 S.Ct. at 2231. The County's lack of response to an informal inquiry on a limited issue (whether a taking would occur if no development were allowed) can in no way be construed as a final decision as to how the County would apply the Riparian Corridor regulations to his property. Since the County has not had the opportunity to apply its regulations to his property, nor taken any definitive position as to how much development it will allow, avenues remain for the County to clarify its position – chiefly, through the formal application process.

The Supreme Court has consistently expressed that a land use agency must have the opportunity to use "its own reasonable procedures, to decide and explain the reach of a challenged regulation" before a takings claim is ripe. *Palazzolo*, 533 U.S. at 620. *Pakdel* did not repudiate this principle. Thus, it does not make sense to conclude that Mr. Mendelson's claim is ripe just because the County did not respond to an informal inquiry, to which it has no obligation to respond, when he has not availed himself of procedures that are designed to elicit a final decision from the County.

1    As discussed thoroughly in the initial set of briefings on the County's motion to dismiss, the text

2    of the Riparian Corridor regulations and the facts alleged in the Complaint do not, by themselves,

3    establish that the County would necessarily deny any and all development on Mendelson's land. Def.'s

4    Mot. to Dismiss 9:7-10:1, Sept. 29, 2020, ECF No. 11; *Pakdel*, 141 S.Ct. at 2230. To summarize, it is not

5    clear how much of Mendelson's property is actually within the Riparian Corridor, and therefore how

6    much of the property is subject to the Riparian Corridor regulations. And even if his property is entirely

7    within the Riparian Corridor, the California Coastal Act specifically allows the County to grant a permit

8    with appropriate mitigations, to the extent necessary to avoid an unconstitutional taking. Mr. Mendelson

9    spends much of his supplemental brief rehashing his mistaken view that the County has zero discretion to

10   permit development on his land, even though nothing in *Pakdel* speaks to the level of discretion the

11   County has under its regulations or the California Coastal Act. *See, e.g.,* Plf.'s Supp. Br. 9:3-10:2.

12   Therefore, analysis of this issue is no different than it was before *Pakdel*. *See also Ralston v. Cty. of San*

13   *Mateo*, No. 21-CV-01880-EMC, 2021 WL 3810269, at *6 (N.D. Cal. Aug. 26, 2021) (concluding that

14   the County has discretion to deviate from its Riparian Corridor regulations).

15   To support his claim that the County has no discretion to permit development on his land,

16   Mendelson is attempting to introduce nine new, irrelevant County documents into the record, even

17   though this Court's order allowed only supplemental briefing regarding *Pakdel*. Plf.'s Supp. Br. 4:22-5:1

18   and 9:8-10. Plf.'s Request for Judicial Notice, Nov. 15, 2021, ECF No. 33.[1] If this Court takes notice of

19   these records, it should not treat them as evidence that the County has no discretion to permit

20   development on his lots. Most of the documents are several decades old and concern lots other than

21   Mendelson's property, and none of them reflect any final decision by any County decision-maker about

22   what it will allow on Mendelson's property if he applies to develop it. Mendelson does not explain in any

23   detail why these documents are relevant to how the County would apply its regulations to his property

24   today, or whether they should be viewed in a particular light following *Pakdel*. Even if the documents are

25   judicially noticeable, they do not support a finding that finality has been established here.

26

27   ─────────────────────
     [1] The County opposes this request for judicial notice and intends to file an opposition within 14 days
28   after the request was filed, per Local Rule 7-3(a).

Because Mendelson has not pleaded any facts showing the County has come to a conclusive, final decision about his still-hypothetical proposal to develop his property, he has not established finality, *de facto* or otherwise, and his claims are not ripe.

**B. For Mendelson's claims to ripen under *Pakdel*, he must pursue the County's administrative process up to and until no avenues remain for the County to change or clarify its decision.**

Mendelson is correct that under *Pakdel*, it may be possible, in limited situations, for a regulatory takings claim to ripen even before a landowner applies for a development permit and receives a formal response. But, significantly, a plaintiff in that situation must identify other facts showing that the government has reached a final decision – as made clear in *Pakdel*. 141 S.Ct. at 2231 (stating that exhaustion "is not a prerequisite for a takings claim when the government has reached a conclusive position").

For example, *Pakdel* quoted *Palazzolo* to say a claim is ripe when "submission of [a] proposal would not have clarified the extent of development permitted." 141 S. Ct. at 2231 (quoting *Palazzolo*, 533 U.S. at 624). Palazzolo wanted to build 74 houses on his wetland property, but he never applied to build them. 533 U.S. at 624. The government did, however, conclusively decide that it would not allow Palazzolo to fill his wetlands. *Id.* at 623. "The rulings of the Council interpreting the regulations at issue, and the briefs, arguments, and candid statements by counsel for both sides, leave no doubt on this point: On the wetlands there can be no fill for any ordinary land use." *Id.* Thus, "it follows of necessity that he could not fill and then build 74 single-family dwellings upon it." *Id.* at 624. The government made it abundantly clear that it would not allow Palazzolo to develop the wetlands in any shape or form, so he did not need to submit a doomed development proposal for his claim to ripen. Because Mendelson has not alleged that the County has taken any action with respect to his property that can reasonably be considered a final decision, this is not one of the rare situations in which a regulatory takings claim is ripe before the plaintiff even submits a development proposal.

Contrary to Mendelson's framing, the County does not seek to "impose a procedural burden" on him that "ordinary civil-rights plaintiffs are not forced to bear." Plf.'s Supp. Br. 10:6-7. While complete administrative exhaustion is not necessarily a prerequisite for a takings lawsuit or most other civil rights claims, ripeness is. *Pakdel*, 141 S.Ct. at 2231. And pursuing at least some administrative process is

usually necessary to establish ripeness because that is the standard way to obtain a final decision from the agency charged with applying the regulations to particular parcels. *Pakdel* is clear that Mendelson must show that the County's "definitive position" has inflicted an "actual, concrete injury" and that he is not "prematurely suing over a hypothetical harm." *Id.* at 2230 (internal quotations and citations omitted). Asking Mendelson to engage with the County's permit application process is not the same as requiring "rote exhaustion of administrative remedies for the sake of exhaustion." Plf.'s Supp. Br. 7:1-2. It is asking him to give the County the tools and information it needs to reach a final decision. At a minimum, Mendelson must engage with the process until no avenues "remain for the government to clarify or change its decision." *Pakdel*, 141 S. Ct. at 22231.

Mendelson argues that *Ralston v. County of San Mateo* was wrongly decided, in part because the court did not "adequately credit the Ralstons' efforts (like Mr. Mendelson's) to procure the County's written acknowledgement of the [regulations'] prohibitory effect on their property" through a "takings analysis." Plf.'s Supp. Br. 11:19-21. But the final decision rule is primarily concerned with how decisive the government's actions are, not how much effort the landowner has expended. *See* 141 S. Ct. at 2231. The *Ralston* plaintiffs' request for a takings analysis, and the Planning Director's preliminary response regarding his potential recommendation for development on the plaintiffs' property, was insufficient to constitute a final County decision. 2021 WL 3810269, at *5. The Director did not have authority to permit or deny development in that context, and he did not foreclose the possibility that the County may permit development based on a complete project proposal. *Id.* at *5-6. All that is to say that even if the County had responded to Mendelson's request for a takings analysis, the response likely would not have been sufficiently final to ripen his claim. He still would have had to pursue additional procedures.

Although *Pakdel* was decided only a few months ago, several courts have had the chance to apply it. Yet Mr. Mendelson finds no support in the case law for his interpretation of *Pakdel*. Thus far, every court to apply *Pakdel* in this context has concluded that takings claimants are excused from pursuing *additional* process only when the government has made its position clear through a final decision directly related to the property at issue. *See, e.g., N. Mill St., LLC v. City of Aspen,* 6 F.4th 1216, 1234 (10th Cir. 2021) (explaining that "a final decision generally requires 'an initial rejection of a particular development proposal,' and a 'definitive action by local authorities indicating with some specificity what level of

development will be permitted on the property in question.'"); *Willan v. Dane Cty.*, No. 21-1617, 2021 WL 4269922, at *3 (7th Cir. Sept. 20, 2021) (finding no final decision when plaintiffs did "not allege taking any steps toward obtaining that permit"); *BJA Enterprises LLC v. City of Yuma*, No. CV-20-01901-PHX-ROS, 2021 WL 3912857, at *2 (D. Ariz. Aug. 31, 2021) (finding a final decision when the agency represented that any attempt to develop would be futile); *Ralston*, 2021 WL 3810269, at *7 ("*Pakdel* does not – indeed it cannot – stand for the proposition that Plaintiffs need not formally apply for a CDP or submit a meaningful development proposal before filing suit."). This Court should adopt the same approach and conclude that Mendelson has not obtained a final decision from the County and therefore is not excused from pursuing the County's administrative process further.

It remains to be seen how the County would apply the regulations to Mendelson's property if ever presented with a complete development proposal. "If the Court allows this lawsuit to proceed under the current posture, it would deprive the County of the opportunity to fully decide whether and how its" regulations apply to Mendelson's property. *Ralston*, at *8. "Adjudicating [his] regulatory takings claims without a final decision from the County would require the trier of fact to impermissibly speculate what land uses the County would allow on the Property." *Id.* at *9. Instead, this Court should dismiss this case until Mendelson seeks and receives a final decision from the County.

## I.  CONCLUSION

For the reasons stated in the principal and supplemental briefs, the County asks the Court to find Mendelson's claim unripe, and to grant the County's motion to dismiss without leave to amend.

Dated:  November 22, 2021

Respectfully submitted,

JOHN C. BEIERS, COUNTY COUNSEL

By:  ___*/s/ Lauren F. Carroll*___

Lauren F. Carroll, Deputy
Kimberly A. Marlow, Deputy
Timothy J. Fox, Deputy

Attorneys for Defendant
COUNTY OF SAN MATEO

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28