UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FELIX MENDELSON,<br>        Plaintiff,<br>v.<br>SAN MATEO COUNTY,<br>        Defendant. | Case No. 20-cv-05696-AGT<br><br>**ORDER GRANTING MOTION TO DISMISS FOLLOWING REMAND**<br>Re: Dkt. No. 11 |

The Ninth Circuit remanded this case so this Court could reevaluate the County's motion to dismiss in light of *Pakdel v. City and County of San Francisco*, 141 S. Ct. 2226 (2021). Having considered *Pakdel*, the Court concludes that even under that intervening decision, the plaintiff's claims, a Fifth Amendment takings claim and a Fourth Amendment seizure claim, are unripe. The Court therefore reaffirms its decision to grant the County's motion to dismiss.

A.    <u>The Fifth Amendment Takings Claim</u>

Before *Pakdel*, precedent made clear that a property owner couldn't pursue a takings claim until the property owner submitted at least "one meaningful development proposal," and the local land-use authority issued a final decision on that proposal. *S. Pac. Transp. Co. v. City of L.A.*, 922 F.2d 498, 504 (9th Cir. 1990); *accord Guatay Christian Fellowship v. Cnty. of San Diego*, 670 F.3d 957, 982 (9th Cir. 2011). The plaintiff in this lawsuit, Felix Mendelson, admits that he didn't submit such a proposal to San Mateo County, so the Court previously held that his takings claim wasn't ripe. *See* Dkt. 23 at 1 (citing Dkt. 15 at 18–19).

*Pakdel* didn't overrule the Ninth Circuit's "one meaningful development proposal" rule,

but the opinion can be read as supporting a more flexible rule. The Supreme Court explained in *Pakdel* that "nothing more than *de facto* finality is necessary," and that a takings claim ripens once "there is no question about how the regulations at issue apply to the particular land in question." 141 S. Ct. at 2230 (simplified). Under this standard, it's conceivable that even without "one meaningful development proposal," there could be "no question" about how land-use regulations apply in certain cases. The regulations could make crystal clear that no development is allowed, in which case the regulations themselves could serve as the government's final decision. In such a scenario, *Pakdel* arguably countenances the property owner's decision to file a takings claim before submitting a meaningful development proposal to the land-use authority.

Even if *Pakdel* is read in this way, however, such that there may be cases in which a landowner can bypass the "one meaningful development proposal" rule, the case at hand isn't one of them. This is because there *is* a question about "how the regulations at issue apply to the particular land in question." *Id.*

Mendelson alleges that his property is located in a riparian corridor subject to San Mateo County's Local Coastal Program (LCP) regulations. He reads those regulations as prohibiting him from building a home or using his land in any economically beneficial way. *See* Compl. ¶¶ 6–13, 19–24. Even if Mendelson's reading of the LCP is accurate, the County has discretion to "limit application of [its] resource protection policies to the extent necessary to allow a property owner a constitutionally reasonable economic use of his or her property." *Felkay v. City of Santa Barbara*, 62 Cal. App. 5th 30, 39 (2021) (quoting *McAllister v. Cal. Coastal Comm'n*, 169 Cal. App. 4th 912, 939 (2008)). The LCP itself, then, doesn't reflect the County's final decision on how specific property within the riparian corridor can be used.

A Ninth Circuit panel held so last fall. In *Ralston v. County of San Mateo*, No. 21-16489, 2022 WL 16570800 (9th Cir. Nov. 1, 2022) (unpublished), *petition for rehearing en banc denied*, No. 21-16489, Dkt. 62 (9th Cir. Jan. 20, 2023), another landowner filed a takings claim against the County. Like Mendelson, this landowner alleged that his property was located in "a defined riparian corridor subject to the County's LCP development restrictions." *Id.* at *1.

The landowner insisted that the LCP restrictions "categorically prohibit[ed] him from building a house on his property." *Id.* He thus asserted that he should be able to pursue a takings claim even without submitting a meaningful development proposal to the County.

The *Ralston* district court held that the landowner's takings claim wasn't ripe, and the Ninth Circuit affirmed. The Ninth Circuit panel reasoned that "[e]ven assuming Ralston's property is located entirely within a riparian corridor and subject to the LCP's development restrictions, the County's LCP alone cannot serve as the County's final decision for an as-applied takings challenge." *Id.* This was because under the California Coastal Act, the County had discretion to deviate from its LCP to avoid a taking:

> [T]he County is given discretion in the application of its LCP regulations under section 30010 of the California Coastal Act, which creates a "narrow exception to strict compliance with restrictions on uses in habitat areas" if necessary to avoid an unconstitutional taking. *See McAllister v. Cal. Coastal Comm'n*, 169 Cal. App. 4th 912, 939 (2008); *see also Felkay v. City of Santa Barbara*, 62 Cal. App. 5th 30, 39 (2021) (holding that, pursuant to section 30010, a local agency may deny a development permit and pay just compensation for the taking or grant the permit with conditions that mitigate environmental impacts).

*Id.* at *2.[1]

Given this discretion, the panel reasoned that if "the County's LCP regulations alone [were to] serve as the County's final decision," as Ralston suggested, that result "would strip the County of its ability to interpret and apply its own regulations as they relate to Ralston's property." *Id.* Until the County had the opportunity to exercise its discretion, the panel reasoned that Ralston's takings claim wouldn't be ripe. *See id.*

---

[1] Section 30010 reads in full as follows:

> The Legislature hereby finds and declares that this division is not intended, and shall not be construed as authorizing the commission, port governing body, or local government acting pursuant to this division to exercise their power to grant or deny a permit in a manner which will take or damage private property for public use, without the payment of just compensation therefor. This section is not intended to increase or decrease the rights of any owner of property under the Constitution of the State of California or the United States.

Cal. Pub. Res. Code § 30010.

The *Ralston* analysis is equally applicable here. Under section 30010 of the Coastal Act, the County has discretion to deviate from its LCP if necessary to avoid an unconstitutional taking. Until the County exercises that discretion, the Court cannot confidently state that "there is no question about how the regulations at issue apply to the particular land in question." *Pakdel*, 141 S. Ct. at 2230 (simplified).

In response, Mendelson argues that section 30010 isn't applicable. He contends that when the County evaluates coastal development permit applications, the County does so only under its LCP, not under the Coastal Act. *See* Opp'n, Dkt. 15 at 16–18. And because section 30010 is part of the Coastal Act, not the County's LCP, Mendelson asserts that the County cannot rely on section 30010 when evaluating coastal development permit applications.

The same argument was raised and tacitly rejected in *Ralston*. *See* Appellants' Opening Brief, No. 21-16489, Dkt. 15-1 at 61–70 (9th Cir. Jan. 7, 2022); *Ralston*, 2022 WL 16570800, at *2. The Court rejects the argument here too.

By its terms, section 30010 applies to any "local government acting pursuant to this division"—that is, pursuant to the Coastal Act. Cal. Pub. Res. Code § 30010. When a local government (like San Mateo County) exercises its authority to issue coastal development permits, it is "acting pursuant to" the Coastal Act, in addition to its LCP. This is because a local government's LCP "implement[s] the provisions and policies of . . . this division [i.e., the Coastal Act] at the local level." Cal. Pub. Res. Code § 30108.6.

*Ralston* supports this interpretation. The decision makes clear that San Mateo County may rely on section 30010 to deviate from its LCP. *See* 2022 WL 16570800, at *2. The California Court of Appeal's decision in *Felkay* is also in accord. That decision reflects that when a local government evaluates a coastal development permit application under its LCP, the local government may rely on section 30010 to "limit application of [its] resource protection policies to the extent necessary to allow a property owner a constitutionally reasonable economic use of his or her property." *Felkay*, 62 Cal. App. 5th at 39 (simplified).

In support of his argument that section 30010 doesn't apply, Mendelson also asks the

4

Court to take judicial notice of nine County documents, the contents of which suggest that in the past, certain County staff and officials believed that the County lacked authority to deviate from its LCP. *See* Dkt. 33. Assuming, without deciding, that the contents of these documents can be judicially noticed on a motion to dismiss, the Court notes that the documents don't reflect a final decision by the County or a definitive reading of the County's LCP. Also, the County now acknowledges that it *can* deviate from its LCP if necessary to avoid an unconstitutional taking. *See* Reply, Dkt. 17 at 10. The County's current interpretation of its LCP is in accord with *Ralston*, *Felkay*, and section 30010.

"The 'basic rationale' of the ripeness doctrine is 'to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 662 (9th Cir. 2002) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). The disagreement at issue here is still abstract because it is unclear how much development the County will permit on Mendelson's land. For this reason, Mendelson's takings claim isn't ripe.

B.    The Fourth Amendment Seizure Claim

The above analysis applies equally to Mendelson's Fourth Amendment claim. Mendelson alleges that the County, by prohibiting all development on his land, "has seized his property arbitrarily and capriciously, and without any legitimate public purpose, in violation of the Fourth Amendment." Compl. ¶ 44. Until Mendelson submits a meaningful development proposal and the County has considered that proposal, it would be speculative and premature to consider whether the County has seized Mendelson's property. Mendelson's Fourth Amendment claim, like his Fifth Amendment claim, isn't ripe.

\* \* \*

Because Mendelson's claims aren't ripe, they can't currently advance in federal court. The Court therefore grants the County's motion to dismiss. Mendelson may renew his claims, if necessary, but only after he files a coastal development permit application and the County issues a final decision on his application.

5

The Clerk shall close the case file.

**IT IS SO ORDERED.**

Dated: March 7, 2023

Alex G. Tse
United States Magistrate Judge